CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 0 3 2013

JULIA C. DUDLEY, CLERK
BY: _____
       DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| MARY SHARON WALKER, | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action Nos.: 7:12-cv-564;** |
| v. | ) | **7:12-cv-615** |
| | ) | |
| NEW ENGLAND COMPOUNDING | ) | **Memorandum Opinion** |
| PHARMACY INC. et al., | ) | |
| | ) | **Hon. James C. Turk** |
| Defendants. | ) | **Senior United States District Judge** |
| | ) | |
| BASIL E. PROFFITT, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | |
| | ) | |
| NEW ENGLAND COMPOUNDING | ) | |
| PHARMACY INC. et al., | ) | |
| | ) | |
| Defendants. | ) | |

These nearly identical suits,[1] consolidated for oral argument and in this Memorandum Opinion and Order, are part of the nationwide litigation surrounding the allegedly contaminated steroids manufactured by New England Compounding Pharmacy, Inc., d/b/a New England Compounding Center ("NECC"). Before the Court are Plaintiffs' Motions to Remand, ECF Nos. 8, 5,[2] Defendant Image Guided Pain Management's ("IGPM") Motions to Dismiss for Failure to State a Claim, ECF Nos. 14, 10, and IGPM's Motions to Dismiss for Lack of Jurisdiction, ECF Nos. 16, 12. The Court heard consolidated oral argument on April 18, 2013 and the matter is now ripe for disposition. For the reasons that follow, the Court **STAYS** the present cases until

---

[1] The same law firm represents the Plaintiffs. The Defendants are identical in each and the same firms represent each Defendant in both cases. As detailed below, the procedural postures of the cases are almost identical.

[2] Throughout the Memorandum Opinion, the ECF Numbers in Ms. Walker's case are listed first and Mr. Proffitt's second.

1

the Judicial Panel on Multidistrict Litigation ("JPML") decides whether to transfer these actions. The Court further **STAYS** these cases until the judge to which the JPML has transferred the other NECC-related cases—Judge Saylor of the District of Massachusetts—considers the Chapter 11 Trustee's Motion to Transfer these and other cases pursuant to 28 U.S.C. §§ 157(b)(5) and 1334.

## I.    FACTUAL AND PROCEDURAL HISTORY

A limited recitation of the facts will suffice for present purposes. Both Plaintiffs filed suit against NECC and IGPM in state court. Soon after each filed suit, NECC removed the cases to this Court and filed for bankruptcy soon after, thus triggering the automatic stay provision of the bankruptcy code as to claims against NECC. See 11 U.S.C. §362. Both Plaintiffs filed a motion to remand and IGPM filed its two motions to dismiss in each case.

On January 31, 2013, the JPML began centralizing eligible NECC-related actions in the District of Massachusetts and assigned Judge F. Dennis Saylor to conduct the consolidated pretrial proceedings. The JPML also issued a Conditional Transfer Order ("CTO") that listed each case[3] and timely notices of opposition were filed in each case.[4] The JPML will consider transferring both cases to the MDL Court on May 30, 2013. See JPML Hearing Information, available at http://www.jpml.uscourts.gov/sites/jpml/files/Hearing_Order-5-30-13.pdf (last accessed on April 30, 2013).

Additionally, NECC's Chapter 11 Trustee has filed a motion with the MDL Court to transfer there all NECC-related personal injury and wrongful death cases pending in state and federal courts, pursuant to 28 U.S.C. §§ 157(b)(5) and 1334. See In Re: New England

---

[3] In Walker, the applicable CTO was CTO-1, issued on February 14, 2013. See JPML Docket, MDL No. 2419, ECF No. 121. In Proffitt, the applicable CTO was CTO-2, issued on February 22, 2013. Id. at ECF No. 130.

[4] See id. at ECF No. 126 (Walker); id. at ECF No. 136 (Proffitt).

2

Compounding Pharmacy, Inc. Products Liability Litigation, No. 1:13-md-02419, ECF No. 37 (D. Mass. March 10, 2013).[5] Both of the present cases are included in the Trustee's Motion. Id. at ECF No. 38 at 22-23. Judge Saylor has established a briefing schedule concerning the Trustee's Motion; all briefing should be completed by May 13, 2013. Id. at ECF No. 87 at 2.

## II.    ANALYSIS

The Court must decide whether to rule on the motions or stay the case pending the outcome of the JPML's consideration of transfer and the MDL Court's consideration of the Trustee's Motion. For the following reasons, the Court finds it appropriate to stay the present proceedings until both tribunals have ruled.

In making this decision, the Court follows the guidance of Meyers v. Bayer AG, 143 F. Supp. 2d 1044 (E.D. Wis. 2001). The Fourth Circuit has not faced the issue, but several district courts within the Fourth Circuit have cited to Meyers with approval and followed its approach. See, e.g., Israel v. Johnson & Johnson, No. 12-cv-2953, 2012 WL 6651928, *1-2 (D. Md. Dec. 19, 2012) (granting stay pending transfer to MDL court rather than decide remand issue); Murphy-Pittman v. DePuy Orthopaedics, Inc., No. 3:12-cv-3179, 2012 WL 6588697, *2 (D.S.C. Dec. 17, 2012) (same); Johnson v. DePuy Orthopaedics, Inc., No. 3:12-cv-2274, 2012 WL 4538642, *2 (D.S.C. Oct. 1, 2012) (same). The court in Meyers, facing a plaintiff's motion to remand and defendants' motion to stay pending the JPML's consideration of transfer, thoroughly analyzed the issue and stayed the case pending the JPML's transfer order rather than rule on the motion to remand. Meyers, 143 F. Supp. 2d at 1046-47.

The court in Meyers described its approach in this way:

> [A] court should first give preliminary scrutiny to the merits of the motion to remand. If this preliminary assessment suggests that removal was improper, the court should promptly complete its consideration and remand the case to state

---

[5] NECC's bankruptcy is also pending in the Bankruptcy Court of the District of Massachusetts.

court. If, on the other hand, the jurisdictional issue appears factually or legally difficult, the court's second step should be to determine whether identical or similar jurisdictional issues have been raised in other cases that have been or may be transferred to the MDL proceeding. . . .

Only if the jurisdictional issue is both difficult and similar or identical to those in cases transferred or likely to be transferred should the court proceed to the third step and consider the motion to stay.

Meyers, 143 F. Supp. 2d at 1049 (internal citations omitted). The Court finds this approach appropriate for the present cases.

The Court's first step, in considering the motion to remand under the Meyers test, is to examine its own subject matter jurisdiction. The Court harbors serious doubts about its diversity jurisdiction[6] and federal-question jurisdiction,[7] but the Court may still possess subject matter jurisdiction by virtue of NECC's filing for bankruptcy. That is, the Court may have jurisdiction under 28 U.S.C. § 1334—and thus removal may have been proper under 28 U.S.C. § 1452—if the claims in this suit are "related to" NECC's bankruptcy proceeding. See 28 U.S.C. § 1334 ("[D]istrict courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.") (emphasis added); 28 U.S.C. § 1452 ("A party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title."). The Court

---

[6] IGPM is incorporated and has its principal place of business in Virginia and is thus a citizen of Virginia for purposes of diversity jurisdiction. See 28 U.S.C. § 1332(c)(1). Both Plaintiffs are citizens of Virginia. Therefore, if IGPM is a proper defendant, the Court has no diversity jurisdiction. In removing the cases from state court, NECC argued that IGPM was fraudulently joined, but the court in Sanders v. Medtronic, Inc., No. 4:06-cv-57, 2006 WL 1788975, at *15 (E.D. Va. June 26, 2006) rejected that argument on similar facts. If IGPM was not fraudulently joined, then diversity jurisdiction does not exist.

[7] As Judge Saylor noted in another NECC case before he was appointed as the MDL Judge, although NECC contended that its activities "may be exempt from some FDA regulations," this alone "is not a sufficient basis for federal question jurisdiction. At most, federal regulations in this case may provide, or bear upon, the standard of care. See Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804, 832 (1986) (finding that the court lacked federal-question jurisdiction over a tort claim incorporating the standard of care from the FDCA)." In Re: New England Compounding Pharmacy Cases, attached at Proffitt, 7:12-cv-615, ECF No. 5-1 at 2. NECC made similar arguments in the present cases.

4

concludes that determining its jurisdiction under these statutes is "factually or legally difficult" for purposes of the Meyers test, for several reasons. First, none of the parties have raised or briefed the issue. Also, the issue is complicated by the fact that NECC did not file for bankruptcy until after it removed the cases to federal court. On this set of facts, the Court's subject matter jurisdiction under 28 U.S.C. §§ 1334 and 1452 is not straightforward.

The second step under the Meyers approach is to "determine whether identical or similar jurisdictional issues have been raised in other cases that have been or may be transferred to the MDL proceeding." Meyers, 143 F. Supp. 2d at 1049. The Court easily answers this question in the affirmative. NECC sold its medication to local medical providers in a number of states, who in turn injected the allegedly defective steroids into the patients. These patients could then have at least a colorable claim against a likely in-state defendant, which would defeat diversity jurisdiction. The same arguments for the probable lack of federal-question jurisdiction would apply to these other cases. NECC's bankruptcy would apply to all potential transferred actions and the 138 actions that are currently contained in the NECC MDL. See Pending MDL Dockets, http://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_by_District-March-5-2013.pdf (last visited April 30, 2013). Many, if not most, of these actions likely have similar removal or bankruptcy issues. Indeed, this Court has had cases with similar issues transferred to the MDL Court. When Judge Saylor decides on this issue, his ruling will likely affect dozens of cases.

The Court next considers whether a stay should be granted. "[C]ourts look to factors such as the length of the requested stay, the hardship that the movant would face if the motion were denied, the burden a stay would impose on the nonmovant, and whether the stay would promote judicial economy by avoiding duplicative litigation." In re Mut. Funds Inv. Litig., MDL No.

1586, 2011 WL 1540134, at *1 (D. Md. Apr. 20, 2011). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254 (1936); see also Clinton v. Jones, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket.").

The Court anticipates that a stay, if granted, would be relatively brief. The JPML will meet in less than a month to consider the transfer order and will likely decide the issue the same day. The briefing in front of Judge Saylor will be completed in two weeks and a decision will be forthcoming soon thereafter.

The interests of judicial economy also clearly favor staying the litigation. Regardless of whether the Court remands the present cases, NECC's Chapter 11 Trustee claims that Judge Saylor may transfer these cases from federal or state court under 28 U.S.C. §§ 157(b)(5) and 1334. See generally Walker, No. 7:12-cv-564, ECF No. 23-1; Proffitt, No. 7:12-cv-615, ECF No. 15-1. Thus, deciding this jurisdictional issue may be entirely unnecessary. Moreover, delaying consideration of the present motions allows for all the NECC-related cases to be decided in a consistent manner by Judge Saylor and the JPML.

As to prejudice to the parties, there is no pending motion in these cases to stay the proceedings and hence there is no moving or non-moving party, although NECC has filed a Notice in each case asking the Court to stay the case. ECF Nos. 23, 15. Regardless, none of the parties are likely to be prejudiced if the Court stays the proceedings for a relatively brief period. Given the bankruptcy stay as to NECC and the likely pace of the litigation against IGPM either in the MDL Court or in state court, this period is not excessive and likely will not be prejudicial

in the least. Thus, the Court concludes that the judicial economy concerns and the short period of the stay clearly outweigh the burdens to any injured party.

The Court therefore stays the present proceedings until the JPML has ruled on the pending transfer actions and Judge Saylor has ruled on the Trustee's Motion to Transfer. If both tribunals rule against transfer, any of the parties may move the Court to lift the stay and issue a ruling on the motions to remand and dismiss.

An appropriate order shall issue this day.

ENTER: This _____3rd____ day of May, 2013.

Hon. James C. Turk
Senior United States District Judge